IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


**BRIAN MICHAEL WATERMAN,**

                    **Plaintiff,**

          **v.**                                        **CASE NO. 20-3243-SAC**

**THOMAS DEGROOT, et al.,**

                    **Defendants.**


<u>**MEMORANDUM AND ORDER**
**TO SHOW CAUSE**</u>

      Plaintiff Brian Michael Waterman, a pretrial detainee at the Cherokee County Jail (CCJ) in Columbus, Kansas, at the time of filing, brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff proceeds *in forma pauperis*.  For the reasons discussed below, Plaintiff is ordered to show cause why his Complaint should not be dismissed.

**I.  Nature of the Matter before the Court**

      Plaintiff's Complaint (ECF No. 1) includes five counts.  In Count I, Plaintiff alleges his due process rights were violated when he was charged with a Level 3 disciplinary violation on January 17, 2019 for participating in or attempting to instigate a riot.  Inmate Williams had been yelling at Plaintiff and corrections officers all night, after weeks of verbally abusing Plaintiff. Plaintiff told Williams that when he went back to the pod, he was going to tell everyone Williams was a snitch.  Plaintiff received a hearing, was found guilty, and was given 11 days in segregation. Plaintiff claims the rule violation was made up to punish him out of "pure malicious and

vindictiveness."  Complaint, ECF No. 1, at 7.  Waterman also mentions the Equal Protection Clause, stating that "[n]o other inmates get special made up rule violations."  *Id*. at 8.

In Count II, Waterman again complains of a due process and equal protection violation as a result of disciplinary action.  On February 4, 2019, Plaintiff flooded his cell when he was told he could not have envelopes and paper he purchased from the commissary until he was off of a 48-hour lockdown.  Waterman was written up for four Level 3 violations and received 60 days of segregation after a disciplinary hearing.  He alleges the "60 days was given to clearly punish me out of malice and pure hatred and dislike."  *Id*. at 9.  He further claims "[n]o other inmate gets disciplinary sanctions stacked like that, but me, at this Jail."  *Id*.

In Count III, Plaintiff alleges unconstitutional conditions of confinement as a result of 24-hour illumination of medical cells.  Waterman states he was confined in a medical cell from January 2019 to April 2019 and suffered headaches and dry eyes, as well as aggravation due to difficulty sleeping and exacerbation of a pre-existing mental disorder.

In Count IV, Plaintiff again complains of a due process and equal protection violation as a result of disciplinary action.  Plaintiff was cleaning his cell and poured some of the cleaning solution down the sink, purportedly to clean the sink drain and the toilet bowl as the sink drain connects to the toilet.  Officer Garrison grabbed the cleaning solution from Waterman, spilling cleaner on Plaintiff's Bible.  Plaintiff "went off" and threw the spray nozzle out of his cell. Waterman states he was already in a bad mood for getting 60 days and for being awakened at 3:00 a.m. to clean.  Garrison wrote Waterman up for four Level 3 violations, and Defendant DeGroot gave him 45 more days in segregation.

In Count V, Waterman claims he was denied mental health services in violation of his constitutional rights.  Plaintiff alleges he was told by APRN Katie Hite in February 2019 that the

CCJ no longer provides mental health services for inmates.  Plaintiff attempted suicide in March 2019 and was seen by Spring River Mental Health.  According to Plaintiff, Defendant Tippie denied him mental health services after that.  Waterman was transferred to Sedgwick County in April 2019, where he remained until he was transferred back to the CCJ in April 2020 and again denied outside mental health services by Defendant Tippie and Defendant Wagner.  Plaintiff was told Wagner, as facility nurse, deals with all mental health issues at the CCJ.  Plaintiff states he has been diagnosed with bipolar disorder.  He asserts Wagner does not do any lab work on medication levels, and jail staff is not trained to deal with individuals with mental health issues.

Plaintiff names as defendants David Groves, the Sheriff of Cherokee County; Thomas DeGroot, Disciplinary Officer; Michelle Tippie, Captain; and Kristin Wagner, Nurse.  He seeks injunctive relief as well as compensatory and punitive damages totaling $450,000.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of such entity to determine whether summary dismissal is appropriate.  28 U.S.C. § 1915A(a).  Additionally, with any litigant, such as Plaintiff, who is proceeding in forma pauperis, the Court has a duty to screen the complaint to determine its sufficiency.  *See* 28 U.S.C. § 1915(e)(2).  Upon completion of this screening, the Court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b), 1915(e)(2)(B).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins,* 487 U.S. 42, 48 (1988)

(citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v.*

*Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).  As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief."  *Kay*, 500 F.3d at 1218 (citation omitted).  Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'"  *Smith*, 561 F.3d at 1098 (citation omitted).  "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III.  Discussion

### Disciplinary violations and segregation

In Counts I, II, and IV, Plaintiff complains about incidents where he was charged with disciplinary violations and received time in segregation as a result.  Plaintiff argues that as a pretrial detainee, he could not be punished and the time in segregation was a punishment.  It is correct that the Fourteenth Amendment "prohibits *any* punishment" of a pretrial detainee, but the prohibition applies only where that punishment occurs without due process.  *Blackmon v. Sutton*, 734 F.3d 1237, 1241 (10th Cir. 2013); 16C C.J.S. Constitutional Law § 1631 ("Because pretrial detainees have liberty interest in being free from punishment prior to conviction under Due Process Clause, a pretrial detainee is entitled to a due process hearing before prison officials may impose restraints on the detainee's liberty for disciplinary reasons.").  Thus, placing a pretrial detainee in disciplinary segregation "*without giving him an opportunity to be heard*" is a due process violation.  *Hubbard v. Nestor*, 830 F. App'x 574, 583 (10th Cir. 2020) (emphasis added).

Plaintiff's description of the incidents indicates that he received a disciplinary hearing each time disciplinary segregation was imposed. *See* Complaint, ECF No. 1, at 7, 8, 9, 11. Consequently, it appears his due process rights were not violated.

Even if Plaintiff did not receive a hearing before being place in disciplinary segregation, no process was required if he was placed in segregation not as punishment but for virtually any reason connected to effective prison management. *See Blackmon*, 734 F.3d at 1241. The determination of whether a condition of pretrial detention amounts to punishment turns on whether the condition is imposed for the purpose of punishment or whether it is incident to some other legitimate government purpose. *Peoples v. CCA Detention Centers*, 422 F.3d 1090, 1106 (10th Cir. 2005). Plaintiff admits that he broke rules and disrupted the CCJ in each instance. His placement in segregation may well have been a legitimate response to his behavior. If the Court were to agree with Plaintiff that he could not receive any discipline as a pretrial detainee, a pretrial detainee could break facility rules and cause disruptions with impunity.

Plaintiff also alleges an equal protection violation for each of the incidents. The Equal Protection Clause requires that "all persons similarly circumstanced shall be treated alike." *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920). *Fogle v. Pierson*, 435 F.3d 1252, 1260 (10th Cir.), *cert. denied*, 549 U.S. 1059 (2006)("Equal protection is essentially a direction that all persons similarly situated should be treated alike."); *Grace United Methodist Church v. City of Cheyenne*, 427 F.3d 775, 792 (10th Cir. 2005). An equal protection violation occurs when the government treats someone differently from another person who is similarly situated, without adequate justification for the difference in treatment. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence*, 927 F.2d 1111, 1118 (10th Cir. 1991). Therefore, in order to succeed on an equal protection claim, Plaintiff must

allege that he was "similarly situated" to other inmates, and that the difference in treatment was not "reasonably related to legitimate penological interests." *Fogle*, 435 F.3d at 1261 (citing *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998); *Turner v. Safley*, 482 U.S. 78, 89 (1987)); see also *Rider v. Werholtz*, 548 F. Supp. 2d 1188 (D. Kan. 2008)(citing *Riddle v. Mondragon*, 83 F.3d 1197, 1207 (10th Cir. 1996)).   A plaintiff alleging an equal protection violation must present specific facts which demonstrate that a "discriminatory purpose" was a motivating factor in the disparate treatment attacked in the Complaint.  *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988); *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

If the alleged difference in treatment is not based on a suspect classification such as race, the plaintiff must also allege facts sufficient to establish "the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose."  *Harrison v. Morton*, 490 F. App'x 988, 994 (10th Cir. 2012) (quoting *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994)).  Because of the wide discretion afforded to prison officials and the many relevant factors these officials may consider when dealing with inmates, an inmate who is not part of a suspect class faces a difficult task to state an equal protection claim.  First, there is a presumption in favor of validity of prison officials' disparate treatment.  *Hill v. Pugh*, 75 F. App'x 715, 720 (10th Cir. 2003).  Second, the requirement to show that an inmate is "similarly situated" to other inmates is arduous, if not impossible, as the Tenth Circuit Court of Appeals noted in *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994)("it is 'clearly baseless' to claim that there are other inmates who are similar in every relevant respect").  *See also Fogle*, 435 F.3d at 1261 (quoting *Templeman* in affirming dismissal of an equal protection claim).

Plaintiff does not claim the alleged difference in treatment was based on a suspect classification.  He supports his equal protection claims with statements like, "My treatment is

different that all the rest of the inmates at Cherokee County Jail, I'm singled out of the entire population" (Complaint, ECF No. 1 at 8) and "No other inmate was receiving multiple sanctions for one incident" (*id*. at 11). These wholly conclusory statements are not sufficient to plausibly state an equal protection claim.

Plaintiff fails to state a claim in Counts I, II, and IV for violation of either his due process or equal protection rights, and these counts are subject to dismissal.

## Continuous lighting in medical cells

Waterman challenges the CCJ's practice of leaving lights on 24 hours a day in the medical cells as an unconstitutional condition of confinement. To prevail on this claim, "he must present evidence that he suffered a harm sufficiently serious to implicate the Cruel and Unusual Punishment Clause." *Murray v. Edwards Cty. Sheriff's Dep't*, 248 F. App'x 993, 998–99 (10th Cir. 2007) (quotations omitted). In addition, he must show that the defendants knew of and disregarded an excessive risk to his health or safety. *Id.*

Plaintiff asserts he was in a medical cell for approximately three months. He claims he suffered headaches and dry eyes and was treated with ibuprofen and eye drops. He further claims the lighting made sleep difficult and exacerbated a pre-existing mental disorder.

Waterman's allegations do not meet either prong of the deliberate indifference standard. The harm he describes is not sufficiently serious to rise to the level of a constitutional violation, and his allegations do not show either an excessive risk to his health or that his asserted harm was disregarded. Count III of the Complaint fails to state a claim for violation of Plaintiff's constitutional rights.

**Mental health services**

As a pretrial detainee, Plaintiff was "entitled to the degree of protection against denial of medical attention which applies to convicted inmates." *Garcia v. Salt Lake Cty.*, 768 F.2d 303, 307 (10th Cir. 1985). This right is secured by the Fourteenth Amendment, which "prohibits deliberate indifference to a pretrial detainee's serious medical needs." *Strain v. Regalado*, 977 F.3d 984, 987 (10th Cir. 2020). The two-part standard used under the Eighth Amendment applies to a pretrial detainee's claim of inadequate medical care. *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1028 (10th Cir. 2020). Under this standard, the reviewing court considers both an objective and a subjective component. "The objective component is met if the deprivation is 'sufficiently serious.' ... The subjective component is met if a prison official 'knows of and disregards an excessive risk to inmate health or safety.'" *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994)).

Here, it appears that Plaintiff's mental health condition may be sufficiently serious to meet the objective prong. However, his allegations do not demonstrate deliberate indifference on the part of Defendants to that condition. Plaintiff acknowledges that he received outside mental health treatment after he attempted suicide in March of 2019, and he states Defendant Wagner, the facility nurse, is tasked with dealing with all mental health issues. Further, Plaintiff states that Wagner put him on medication for bipolar disorder. Complaint, ECF NO. 1, at 10. Plaintiff's complaint seems to be with the reported elimination of "mental health services out of the jail." Complaint, ECF No. 1, at 12. While Plaintiff is entitled to adequate medical care, a mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute deliberate indifference. *See Estelle v. Gamble*, 429 U.S. 97, 106–07 (1976); *Ledoux v. Davies*, 961 F.2d 1536 (10th Cir. 1992) (Plaintiff's contention that he was denied treatment by

a specialist is insufficient to establish a constitutional violation.); *El'Amin v. Pearce*, 750 F.2d 829, 833 (10th Cir. 1984) (A mere difference of opinion over the adequacy of medical treatment received cannot provide the basis for an Eighth Amendment claim.).   The prisoner's right is to medical care - not to the type or scope of medical care he personally desires.   A difference of opinion between a physician and a patient or even between two medical providers does not give rise to a constitutional right or sustain a claim under § 1983.   *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968).

Plaintiff fails to state a claim in Count V of the Complaint.

## No personal participation of Sheriff

An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based.   *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006); *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997).   Conclusory allegations of involvement are not sufficient.   *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").   As a result, a plaintiff is required to name each defendant not only in the caption of the complaint, but again in the body of the complaint and to include in the body a description of the acts taken by each defendant that violated plaintiff's federal constitutional rights.

Plaintiff names Sheriff Groves as a defendant but only mentions him in the most conclusory way in the body of the Complaint (i.e., "Sheriff Groves approved of the 11 days in segregation after reviewing the write up and disciplinary hearing."; "The Sheriff approves of such treatment." Complaint, ECF No. 1, at 7).   An official's liability may not be predicated solely upon a theory of

respondeat superior.  *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Duffield v. Jackson*, 545 F.3d

1234, 1239 (10th Cir. 2008); *Gagan v. Norton*, 35 F.3d 1473, 1476 n.4 (10th Cir. 1994), *cert.*

*denied*, 513 U.S. 1183 (1995).  To be held liable under § 1983, a supervisor must have personally

participated in the complained-of constitutional deprivation.  *Meade v. Grubbs*, 841 F.2d 1512,

1528 (10th Cir. 1988).  "[T]he defendant's role must be more than one of abstract authority over

individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d

1147, 1162 (10th Cir. 2008).

Sheriff Groves is subject to dismissal from this action.

### Claims for damages

Section 1997e(e) . . . provides in pertinent part:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or
> other correctional facility, for mental or emotional injury suffered while in custody
> without a prior showing of physical injury.

42 U.S.C. § 1997e(e).  "The statute limits the remedies available, regardless of the rights asserted,

if the only injuries are mental or emotional."  *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir.

2001).  Section 1997e(e) applies regardless of the nature of the underlying substantive violation

asserted.  *Id.* (applying §1997e(e) to the plaintiff's First Amendment claim for free exercise of

religion).

Plaintiff does not allege any physical injury in Count I, II, IV, or V of the Complaint.  As

a result, his claims for damages resulting from the alleged violations described in those counts

are barred.

## IV.  Response Required

For the reasons stated herein, Plaintiff's Complaint is subject to dismissal under 28 U.S.C.

§§ 1915A(b) and 1915(e)(2)(B) for failure to state a claim upon which relief may be granted.

Plaintiff is therefore required to show good cause why his Complaint should not be dismissed. Plaintiff is warned that his failure to file a timely response may result in the Complaint being dismissed for the reasons stated herein without further notice.

## V. Pending motions

Plaintiff has filed three motions.  The first is titled a Motion to Send the Defendants a Copy of the Complaint (ECF No. 8).  Because this case is subject to screening, the defendants will not be served unless the Court determines the case may proceed.  The motion is denied.

The second motion is titled a Motion to Court Order the Defendants to Pay the Filing Fee (ECF No. 9).  Plaintiff asks the Court to order the CCJ to pay the initial partial filing fee from his account.  The CCJ has acknowledged the filing fee order (ECF No. 5) and filed a response stating Waterman's account was already overdrawn so the initial fee could not be paid (ECF No. 7).  It does not appear that an additional order is necessary at this time.  The motion is denied.

Plaintiff's final motion is titled Motion to have Plaintiff Transferred from Cherokee County Jail Immediately (ECF No. 10).  The motion is denied as moot because Plaintiff notified the Court that he is no longer at the CCJ (see ECF No. 11).

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **June 7, 2021,** in which to show good cause, in writing, why the Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Send the Defendants a Copy of the Complaint (ECF No. 8) and Motion to Court Order the Defendants to Pay the Filing Fee (ECF No. 9) are **denied**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to have Plaintiff Transferred from Cherokee County Jail Immediately (ECF No. 10) is **denied as moot**.

**IT IS SO ORDERED.**

**DATED:  This 7th day of May, 2021, at Topeka, Kansas.**


s/  Sam A. Crow
**SAM A. CROW**
**U.S. Senior District Judge**

13