IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRIAN MICHAEL WATERMAN,

        **Plaintiff,**

v.              CASE NO. 20-3243-SAC

THOMAS DEGROOT, et al.,

        **Defendants.**

### MEMORANDUM AND ORDER

This matter is a civil rights action. By order dated May 7, 2021 (ECF No. 12; "MOSC"), the Court directed Plaintiff to show cause why his Complaint should not be dismissed for failure to state a claim upon which relief may be granted. Before the Court is Plaintiff's response to the MOSC (ECF No. 15).

**I. Nature of the Matter before the Court**

Plaintiff's Complaint (ECF No. 1) includes five counts. In Count I, Plaintiff alleges his due process rights were violated when he was charged with a Level 3 disciplinary violation on January 17, 2019 for participating in or attempting to instigate a riot. Inmate Williams had been yelling at Plaintiff and corrections officers all night, after weeks of verbally abusing Plaintiff. Plaintiff told Williams that when he went back to the pod, he was going to tell everyone Williams was a snitch. Plaintiff received a hearing, was found guilty, and was given 11 days in segregation. Plaintiff claims the rule violation was made up to punish him out of "pure malicious and vindictiveness." Complaint, ECF No. 1, at 7. Waterman also mentions the Equal Protection Clause, stating that "[n]o other inmates get special made up rule violations." *Id*. at 8.

1

In Count II, Waterman again complains of a due process and equal protection violation as a result of disciplinary action. On February 4, 2019, Plaintiff flooded his cell when he was told he could not have envelopes and paper he purchased from the commissary until he was off of a 48-hour lockdown. Waterman was written up for four Level 3 violations and received 60 days of segregation after a disciplinary hearing. He alleges the "60 days was given to clearly punish me out of malice and pure hatred and dislike." *Id.* at 9. He further claims "[n]o other inmate gets disciplinary sanctions stacked like that, but me, at this Jail." *Id.*

In Count III, Plaintiff alleges unconstitutional conditions of confinement as a result of 24-hour illumination of medical cells. Waterman states he was confined in a medical cell from January 2019 to April 2019 and suffered headaches and dry eyes, as well as aggravation due to difficulty sleeping and exacerbation of a pre-existing mental disorder.

In Count IV, Plaintiff again complains of a due process and equal protection violation as a result of disciplinary action. Plaintiff was cleaning his cell and poured some of the cleaning solution down the sink, purportedly to clean the sink drain and the toilet bowl as the sink drain connects to the toilet. Officer Garrison grabbed the cleaning solution from Waterman, spilling cleaner on Plaintiff's Bible. Plaintiff "went off" and threw the spray nozzle out of his cell. Waterman states he was already in a bad mood for getting 60 days and for being awakened at 3:00 a.m. to clean. Garrison wrote Waterman up for four Level 3 violations, and Defendant DeGroot gave him 45 more days in segregation.

In Count V, Waterman claims he was denied mental health services in violation of his constitutional rights. Plaintiff alleges he was told by APRN Katie Hite in February 2019 that the CCJ no longer provides mental health services for inmates. Plaintiff attempted suicide in March 2019 and was seen by Spring River Mental Health. According to Plaintiff, Defendant Tippie

2

denied him mental health services after that. Waterman was transferred to Sedgwick County in April 2019, where he remained until he was transferred back to the CCJ in April 2020 and again denied outside mental health services by Defendant Tippie and Defendant Wagner. Plaintiff was told Wagner, as facility nurse, deals with all mental health issues at the CCJ. Plaintiff states he has been diagnosed with bipolar disorder. He asserts Wagner does not do any lab work on medication levels, and jail staff is not trained to deal with individuals with mental health issues.

## II. Plaintiff's Response

Plaintiff begins by asserting that the Court's MOSC is "vindictive and malicious in nature" as he "clearly stated a claim in all 5 counts." ECF No. 15, at 1. Plaintiff goes on to merely re-assert the same arguments and allegations he made in the Complaint. Plaintiff repeatedly refers to *Wolff v. McDonnell*, 418 U.S. 539 (1974), as supporting his arguments. However, *Wolff* addresses the process required for depriving convicted prisoners of good-time credits as a sanction for misconduct. *Id.* at 557. Here, good-time credits are not at issue.

Plaintiff's primary basis for his due process and equal protection claims seems to be the mistaken belief that "a detainee can only be found guilty of one major or minor violation for a single incident." ECF No. 15, at 4. He cites *Wolff* for this proposition, but the Court has found no support for Plaintiff's assertion. *Wolff* does refer to major and minor misconduct, but it does so only in the context of describing Nebraska's regulatory scheme for controlling inmate misconduct; the Supreme Court does not state that a prisoner can only be found guilty of one disciplinary violation per incident. *Wolff*, 418 U.S. at 548-49. For the reasons stated in the MOSC, the Court continues to find that Plaintiff fails to state a claim for violation of his constitutional rights in Counts I, II, or IV.

In response to the Court's analysis of his 24-hour illumination claim, Plaintiff again asserts the existence of "established case law" that constant lighting is per se unconstitutional. The first case cited by Plaintiff, *Hoptowit v. Spellman*, 753 F.2d 779 (9th Cir. 1985), is from a different circuit and is addressing lighting "so poor that it was inadequate for reading." *Hoptowit*, 753 F.2d at 783. The second case Plaintiff cites in support is a 1990 District of Oregon case, also from the Ninth Circuit. *See LeMaire, v. Maass*, 745 F. Supp. 623, 636 (D. Or. 1990). Plaintiff does not cite, nor has the Court found, a Tenth Circuit opinion holding 24-hour illumination is per se unconstitutional. The Court continues to find that Plaintiff fails to state a claim for cruel and unusual punishment in Count III.

Plaintiff forcefully objects to the Court's analysis of Count V as well, arguing the CCJ should be providing more or different services for detainees with mental health issues. However, as explained in the MOSC, the Court finds that Plaintiff has not met the high bar for stating a claim for deliberate indifference.

Finally, Plaintiff also expresses his disagreement with the personal participation requirement to state a claim against a defendant in a civil rights action and the inapplicability of vicarious liability. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006); *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997); *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Plaintiff's allegations that Sheriff Groves was "bound to have noticed what was going on" and "must have encouraged or condoned 'the actions'" are the sort of conclusory allegations that are insufficient to state a claim. *See Ashcroft*, 556 U.S. at 676.

Plaintiff has failed to show good cause why his Complaint should not be dismissed.

**III.  Motion to Continue Proceedings (ECF No. 26)**

Plaintiff filed a motion requesting a stay of this case (and his other three pending cases) until he is sentenced and transferred to the custody of the Kansas Department of Corrections.  He asserts this is likely to occur by early January of 2022.

Because Plaintiff had the opportunity to show cause and no further proceedings are anticipated in this case, the motion is denied.

**IT IS THEREFORE ORDERED** that Plaintiff's Complaint is **dismissed** for failure to state a claim upon which relief can be granted.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Continue Proceedings (ECF No. 26) is **denied**.

**IT IS SO ORDERED.**

**DATED:  This 7th day of December, 2021, at Topeka, Kansas.**

 <u>s/ Sam A. Crow</u>
 **SAM A. CROW**
 **U.S. Senior District Judge**